## STATE v. INLAND COAL & DOCK COMPANY.
## STATE v. M. A. HANNA COAL & DOCK COMPANY.[1]

July 12, 1940.

Nos. 32,457, 32,478.

*Doherty, Rumble, Butler, Sullivan & Mitchell,* for appellants.
*J. A. A. Burnquist,* Attorney General, and *George T. Simpson,* Assistant Attorney General, for the State.

HOLT, JUSTICE.

Two actions brought by the state to recover state weighmaster's fees of 50 cents a carload of coal transported by rail from the coal docks of defendants to their retail yards at Minneapolis and St. Paul. Plaintiff's demurrers to the answers were sustained, and defendants appeal.

The two cases were by stipulation to be heard as one and were submitted in this court upon one brief by each side. They are alike except to the numbers of cars weighed for each defendant, and except that the defendant Inland Coal & Dock Company operates its retail yards at Minneapolis by a wholly owned subsidiary corporation—the International

[1]Reported in 293 N. W. 611.

Fuel Company—to which the cars were shipped. It is not. claimed by plaintiff that this makes any difference as to the right of recovery. We therefore state the substance of the complaint and answer in only one case—the M. A. Hanna Coal & Dock Company case.

The complaint alleges that defendant is an Ohio corporation engaged in business of selling coal in carload lots; and for that purpose maintained a dock at Duluth for the storage of coal pending sale; that the railroad and warehouse commission has authority to adopt and enforce reasonable regulations for weighing of coal shipped from said dock except coal shipped by persons, companies, and corporations for their own use; and that the fee of the weighmaster appointed by the commission of 50 cents a car was reasonable. The answer admits the foregoing allegations of the complaint and the number of cars alleged to have been weighed. It then set up that the cars of coal thus weighed and shipped, as alleged in the complaint, to defendant at its retail yards in Minneapolis and St. Paul, are there unloaded and piled before subsequent sale to the public in less than carload lots, "and that all of said shipments above mentioned were so unloaded and piled before subsequent sale. That in addition all of said coal was treated for dust at said retail yards with either steam or oil in accordance with defendant's customary practice, and that some of said coal was screened and sorted at said yards before resale." The existence of ordinances in both Minneapolis and St. Paul requiring the city weighmaster to weigh all coal sold to consumers or buyers at retail is also pleaded.

1 Mason Minn. St. 1927, § 4678: "The railroad and warehouse commission shall have power to enforce reasonable regulations for the weighing of cars of coal offered for shipment in carload lots in this state, except coal shipped by any person, company or corporation for their own use or consumption."

Section 4679: "Such commission shall cause to be weighed all coal shipped in carload lots from any coal dock or coal distributing point in the state of Minnesota, except coal shipped therefrom by any person, company or corporation for their own use or consumption."

We think the only question presented by the appeal is whether the cars of coal were shipped by defendant for its "own use or consumption." If they were, they were excepted from the weighing. Defendant does not question the constitutionality of the statutes quoted, nor the reasonableness of fee prescribed by the railroad and warehouse commission, but insists that the cars of coal referred to in the complaint were shipped to defendant for its "own use or consumption." Statutes and municipal ordinances in respect to weighing commodities usually sold by weight are enacted and enforced under the police power to protect the public from fraud and imposition. State ex rel. Stone v. Eck, 121 Minn. 202, 141 N. W. 106, Ann. Cas. 1914C, 678. To the same purpose may be cited Inland Compress Co. v. Lee, 47 Okl. 101, 147 P. 775; State v. Co-operative Store Co. 123 Tenn. 399, 131 S. W. 867, Ann. Cas. 1912C, 248; City of Seattle v. Goldsmith, 73 Wash. 54, 131 P. 456.

The contention of the state is that the exception stated in the alternative in the sections quoted means one and the same thing, that is, for defendant's "own use" must be a use equivalent to "consumption." Of course coal, whether used to produce heat or power, is changed or destroyed as coal by combustion. It also by various processes can be changed into other beneficial uses. However, it is hardly believable that the legislature intended only to except those cars of coal which the shipper intended personally to burn. When the exception is read with the purpose of the statutes in view, it seems to us it means that when the shipper transports cars of coal from his own dock to his own yard to be there unloaded and kept for such use as he may desire to make of it, it is for his "own use." And weighing of such cars of coal

is of no conceivable protection to the public. It matters not whether the shipper uses the coal after unloaded in his retail yard to heat his office therein or sells it at retail to others. The weight of the coal while transported can be of no earthly concern to the public. It cannot be suggested that the weighing is for the protection of the carrier, for, if such be the purpose, it would be equally necessary to weigh the cars of coal that the shipper burns to heat his premises or for other uses. The weighing of carload lots of coal at the dock or point of distribution is undoubtedly for the protection of the purchasers of coal by the carload. A shipper may divert cars loaded with coal in the course of transportation and dispose of them to others. But the allegations of the answer must be accepted as true that the coal in the cars here involved was unloaded in defendant's retail yard, there treated or screened, and then sold by small lots to the retail trade. No reason at all has been suggested why these cars of coal shipped from defendant's dock at Duluth to its Minneapolis or St. Paul retail yard and there unloaded should have been weighed by the state weigher at the dock in Duluth. The 50-cent fee is not intended as a tax or revenue, nor to give employment to state officials or employes. Our conclusion is that the demurrer should have been overruled.

Orders reversed.